BAILES, Judge.
This is a tort action brought by plaintiffs, husband and wife, against defendant, Allstate Insurance Company, to recover damages occasioned them in a vehicular *370 collision involving the automobile driven by Mr. Crowe and another vehicle insured by defendant. The trial court, awarded judgm'ent in favor of both plaintiffs for special and general damages and against defendant in this suit. This case was consolidated for the purpose of trial with a companion suit filed by Allstate Insurance Company and C. O. Price, the owner of the automobile insured by Allstate, to recover the damages inflicted on the Price automobile in the subject collision. While the reasons assigned in this case will control the judgment to be rendered in this companion case, Allstate Ins. Co. v. Crowe, 211 So.2d 374, a separate opinion and decree will be rendered therein.
Being aggrieved by the adverse judgment rendered in favor of the plaintiffs, Allstate has appealed. For the reasons herein assigned, we find the trial court committed manifest error in concluding that the driver of the Price automobile was guilty of actionable negligence and that such negligence was the proximate cause of the accident. Conversely, we find the driver of the Price vehicle was free of negligence. Accordingly, we must reverse the judgment of the trial court.
The accident which formed the basis for this lawsuit occurred in the City of Boga-lusa, Louisiana, on January 28, 1966. It took place on Avenue B at or near the intersection of Avenue B and Sixth Street. Avenue B is a boulevard street which courses north and south with the two opposing traffic lanes divided by a neutral ground or median having a width of about six feet. Sixth Street runs east and west and is of average width. On the day of the accident the streets were wet and a light rain or mist was falling at the time. The collision occurred about 1:00 p. m. The speed limit on Avenue B was 30 mph.
The only persons occupying the plaintiffs’ automobile were the plaintiffs. Mr. Crowe was driving and Mrs. Crowe was sitting on the right front seat. The Price automobile was operated by Carol Price, daughter of the owner. She was accompanied by a friend, Miss Debbie Mutter. Both of these young ladies were sixteen years of age and high school students. While the destination of the Crowes is not clear from the record, it appears that Miss Price and her guest were returning to high school after having had lunch at the Price home.
Immediately prior to the accident, Mr. Crowe had been proceeding east on Sixth Street. He testified that when he approached the intersection of Sixth Street with the south bound lane of Avenue B he stopped in obedience to a stop sign. As there was no opposing traffic approaching, he proceeded across this south bound lane of Avenue B and stopped again before entering the north bound lane of this street. It was his intention to proceed north on Avenue B, therefore it was necessary for him to turn left from Sixth Street into the north bound lane of Avenue B. He stated he again stopped and looked for traffic approaching from his right. He testified that he could see more than 100 feet to his right. Upon seeing no vehicle approaching him from his right, he drove his automobile into a left turn into the north bound lane of Avenue B. According to his version of the 'ensuing collision, all of which he was completely unaware at the time he turned north into Avenue B, he stated he had driven about 100 feet north when he was struck in the rear by the Price vehicle. .He further stated that the force of the impact dazed him, or in his words “it knocked me dizzy,” and he continued to drive his vehicle a distance of one and one-half or two blocks further north on Avenue B. He finally stopped at a sandwich shop on the right side of the street. He estimated his speed at the time of the impact at 20 mph.
The plaintiff’s, Mr. Crowe’s, version of the accident is more or less substantiated in every particular by the testimony of his wife, also plaintiff. The most noticeable difference in the testimony of Mrs. Crowe *371 and that of her husband is her statement that when Mr. Crowe stopped in the intersection just prior to making the left turn to proceed in a northerly direction on Avenue B she could see from 150 feet to 300 feet south of Avenue B and that there was no vehicle approaching the intersection from the south. She also placed the point of impact between the two vehicles at least 100 feet north of the intersection.
On cross-examination, Mr. Crowe stated that the point of impact could have been less than 100 feet north of the intersection. Neither of the plaintiffs returned to the scene of the accident at the time of the investigation by the -Bogalusa city police. Mrs. Crowe stated they did not return until about one week before the trial.
The two occupants of the Price car relate a different account of the accident. While these chronicles are in the main congruous, there is variance in reporting distances involved both before and after the accident.
Young Miss Carol Price related that she was returning to high school after having had lunch at her home, accompanied by Miss Debbie Mutter. She fixed her speed immediately prior to the accident at about 30 mph, the maximum lawful speed. She said she saw the Crowe vehicle pull up to the stop sign on Sixth Street and then he drove across the intersection immediately in front of her and that she struck him after he had gone about 20 feet north of Avenue B. She readily admitted that she did not slow down or put on her brakes prior to the time Mr. Crowe entered her side of the street because she believed that he was going to accord her the right of way. She placed her distance from the intersection at about three car lengths when Mr. Crowe pulled into Avenue B.
Miss Mutter, the passenger in the Price car, stated that they were driving about 30 mph prior to the accident; that she first saw the Crowe vehicle when it pulled into Avenue B from the stop sign on Sixth Street and at that time the automobile in which she was riding was about four to five car lengths from the intersection. She stated the Crowe vehicle was in her view as it pulled across the intersection and that it did not stop.prior to turning north on Avenu'e B. She fixed the point of impact in the north bound lane at the position where the Crowe vehicle had completed its turn.
The record clearly demonstrates that the Price automobile traveled some distance in its traffic lane on Avenue B after contact with the Crowe vehicle, then crossed the neutral ground and came to rest with the front portion extending into the south bound lane. There is some dispute as to the exact distance it traveled, however, it seems reasonable to state that it was found to be 50 to 75 feet north of the intersection.
Shortly after the accident, Mr. Price came to the scene to determine, if he could, what had occurred. Although not a witness to the mishap, he fixed the point of impact from 25 to 35 feet north of the intersection. He reasoned that this was the place where contact was made because he found glass and perhaps other debris at this point.
Mr. John W. Hartzog, a city patrolman of Bogalusa, together with Officer Albert Jones investigated the accident. Mr. Hart-zog testified that Mr. Crowe did not say exactly where he was on Avenue B when the rear of his vehicle was struck, however, he did state that he had cleared the intersection. He did not remember seeing any debris on the street as evidencing a point of impact, but he refrained from stating there was no debris, in fact, there. He stated he did not know where the point of impact was. The police report of the accident which he used to refresh his memory of the attending facts shows the point of impact as being almost within the intersection in the north bound traffic lane of Avenue B. When interrogated about *372 the correctness of this fact on the report, Mr. Hartzog denied any knowledge of having made this determination. The other investigating officer likewise denied any knowledge of this determination.
In his reasons for judgment, the trial judge stated:

“After careful study and without benefit of the transcript of testimony, the court has reached the conclusion that Mr. Crowe, who was operating his automobile, did stop at the intersection as provided by law and required by the stop sign at the southwest intersection of Avenue B and West Sixth Street. That he proceeded across the neutral ground and stopped clear of the north bound lane. Seeing no one approaching in the immediate vicinity, he turned left into the north bound lane and had proceeded up Avenue B some 100 feet or more when he was struck in the rear by the vehicle of Mr. Price operated by his sixteen year old daughter. Crowe had pre-empted the intersection, had cleared the intersection and was proceeding north when he was struck in the rear. Therefore, we reach the conclusion that the sole proximate cause of the accident was the negligence of the operator of the Price automobile.
* ‡ »
We must conclude that of the parties involved in the accident, the plaintiffs are the least likely to have dependable or accurate information as the point of impact for the reasons that Mr. Crowe did not stop; did not fix the point of impact for the investigating officer who was on the scene within a short time, but only stated to the officer that he had cleared the intersection; in his testimony did not relate the point of impact with any physical object on or near the street; and for the further reason he stated he was “knocked dizzy” and could not bring his vehicle to a stop until he traveled at least one and one-half blocks.
From our review of the testimony of the witnesses, we conclude the point of impact was within 25 to 35 feet north of the intersection. We are persuaded to this finding by the testimony of the driver and the guest passenger of the Price vehicle, by the testimony of Mr. Price that he found glass in the street within that distance of the intersection, and by the fact that this testimony stands uncontradicted in any aspect by the police report of the accident, made within a few minutes after the accident, or by the testimony of Mr. Hartzog, one of the investigating officers. From the photographs in evidence of the damage to the rear of the Crowe vehicle, it is quite apparent to us that no great force was exerted by the Price vehicle, thus negating any excessive speed on its part. The conclusion is inescapable that the Price vehicle was being driven at a speed not in excess of 30 mph and that Mr. Crowe, if he looked to the south, should have seen the Price vehicle in close proximity of the intersection.
We find that the trial judge committed reversible error in his finding that Mr. Crowe had pre-empted the intersection. To sustain such a finding, it must be determined that the Price vehicle was traveling at an excessive rate of speed and was a sufficient distance south of the intersection to have afforded Mr. Crowe ample time to have negotiated the turn and entrance into the north bound lane of Avenue B. In view of the fact that both plaintiffs testified that they did not see the Price vehicle they cannot state and have not stated at what speed the Price vehicle was traveling or where it was located on Avenue B when they made their ill-fated turn into its path.
We have no reason to doubt the truthfulness and the correctness of the testimony of the occupants of the Price vehicle that they saw the Crowe automobile as it entered Avenue B from Sixth Street and that they assumed it would stop and accord them the right of way. When the driver *373 became aware of the intention of Mr. Crowe to drive into the north hound lane of Avenue B it was then too late for her to stop the Price car.
On our finding that the point of impact between the two vehicles was from 25 to 35 feet north of the intersection, that the Price vehicle was being operated within the legal speed limit, and finding no circumstances present which would have placed a duty on the operator of the Price vehicle to drive at a reduced speed or with greater than ordinary care and caution, it logically follows that the Price vehicle was within close proximity of the intersection at the time Mr. Crowe drove into the north bound lane of Avenue B.
While many cases can be cited from our jurisprudence to support our finding of no negligence on the part of the operator of the Price vehicle, it is sufficient to quote from the case of Reynolds v. Hardware Mutual Casualty Company (1966) 249 La. 268, 186 So.2d 588, in which the Supreme Court stated:
“[2] In view of the fact that Mrs. Bloomenstiel was on the favored road, driving well within the legal speed limit, and there were no unusual circumstances which would require extreme caution, we agree with the Court of Appeal’s conclusion that she was guilty of no negligent conduct. She had the right to assume that the Dake vehicle would honor her superior right-of-way. But when she realized that such would not be done it was too late for her to avoid the accident. * *
It was negligence on the part of Mr. Crowe to enter the north bound lane of Avenue B without first stopping to ascertain that his left turn could be made in safety, or, if he did in fact stop before making the left turn, in not ascertaining that the movement into the north bound lane of traffic could be made in safety. When a motorist does stop at an intersection and then proceeds to make a left turn into the path of an oncoming car, the turning motorist is charged with having seen that which he should have seen, namely, the presence of the oncoming vehicle. And, although one stops before entering the intersection, due and reasonable care requires him to ascertain that the way is clear before proceeding farther.
In their brief, plaintiffs argue that Miss Price was driving too fast under the prevailing circumstance and the prevailing weather conditions, and that possibly she was late and was in a hurry to get back to school. We can only state that there is not one iota of evidence in the record to support the plaintiffs’ conclusion that Miss Price was driving too fast under the prevailing circumstance or that possibly she was late in returning to school. Further, plaintiffs argue that: “* * * Miss Price traveled this road frequently. She knew, as everyone in the City of Bogalusa does know, that this a busy intersection with cars frequently entering into this intersection from the Pleasant Hill residential and business area. * * Our close scrutiny of the record convinces us that there is not one scintilla of evidence to support this argument and that such an argument is de-hors the record.
There is evidence in the record that at the time of the accident there were some azalea bushes on the southeast corner of the neutral ground which might have obscured Mr. Crowe’s vision to the right. If these bushes were large enough to obscure his view to the right, this obstruction of view would place an even greater burden on Mr. Crowe to be cautious in entering the north bound lane of traffic.
For the foregoing reasons, we conclude that the negligence of Mr. Crowe was the sole and proximate cause of this accident and that the driver of the Price vehicle, for whom public liability insurance was provided by defendant, Allstate Insurance Company, was free of any actionable negligence.
*374 Accordingly, the judgment appealed from is reversed and there is judgment herein in favor of the defendant, Allstate Insurance Company, and against the plaintiffs, Marshall Crowe and Elma Crowe, r'e-j ecting their demands at their costs.
Reversed and rendered.