DOMENGEAUX, Judge.
This tort action arose from an intersec-tional collision on November 5, 1971, in Marksville, Louisiana, involving plaintiff-appellant, Steve Doucas, and defendant-ap-pellee, O. J. Scallan, Jr. Also made defendants were Scallan Motor Company, the Estate of Ogere J. Scallan, Sr., and Universal Underwriters Insurance Company, the liability insurer of Scallan Motor Company. Following trial on the merits, the District Judge awarded plaintiff $3,500.00 for pain and suffering only. Plaintiff has appealed seeking an increase in the award for general damages and additionally an award for special damages for certain medical expenses allegedly incurred by him as a result of the accident. Defendants have answered the appeal seeking a reversal on the issue of their liability for the collision and alternatively petition this court to reduce plaintiff’s award to $1,000.-00.
THE ACCIDENT
On the morning of November 5, 1971, in Marksville, Avoyelles Parish, Louisiana, plaintiff was driving his automobile in an easterly direction on Acton Road (La. Hwy. # 1189) a paved two-laned highway running east and west. Defendant was driving north on Poret Drive, a graveled road running north and south. Acton Road and Poret Drive meet, forming a “T-intersection” with Poret Drive coming to a dead-end at Acton Road. On the date in question, there was no stop sign at the above described intersection.
Plaintiff was traveling within the speed limit (40 to 45 miles per hour) and observed defendant’s car approaching the “T-intersection”. Defendant apparently stopped at the intersection and looked both ways, however his view was obstructed somewhat by an automobile which was parked on the southern side of Acton Road. Defendant pulled out from Poret Drive, attempting to make a left turn onto Acton Road and, seeing plaintiff’s automobile approaching, stopped his vehicle at approximately the center line of Acton Road. Plaintiff applied his brakes and after skidding for approximately 98 feet, collided with defendant’s automobile.
We have no hesitancy in concluding that, although no stop sign was present on Poret Drive plaintiff was possessed with the right-of-way at the intersection. The evidence clearly indicates that Acton Road was a main thoroughfare and that Poret Drive was merely a side road. A vehicle entering a main highway from a side road at a “T-intersection” must yield the right-of-way, and a driver on the main road has a right to assume that the operator on the subordinate highway will stop and yield. Trahan v. Lantier, 33 So.2d 136 (La.App. 1st Cir. 1947). Generally speaking, a main road is favored and persons traveling thereon enjoy a right-of-way. McMorris v. Webb, 67 So.2d 146 (La.App. 1st Cir. 1953). The term “main thoroughfare” is synonymous with “favored street”. Butler v. O’Neal, 26 So.2d 753 (La.App. 2nd Cir. 1946).
The rule is well settled in our jurisprudence that a driver entering a right-of-way street where the view is obstructed is under a duty to proceed with extraordinary caution. See Continental Insurance Company v. Duthu, 235 So.2d 182 (La. App. 4th Cir. 1970), writ refused 256 La. 820, 239 So.2d 346; Berry v. Festervan, 215 So.2d 398 (La.App. 2nd Cir. *770 1968); Crowe v. Allstate Insurance Company, 211 So.2d 369 (La.App. 1st Cir. 1968), writ refused 252 La. 869, 214 So.2d 544; Taylor v. Haik, 208 So.2d 433 (La. App. 4th Cir. 1968); Sunday v. United States Fidelity and Guaranty Company, 243 So.2d 310 (La.App. 4th Cir. 1971); and Dowden v. Houston Fire & Casualty Insurance Company, 81 So.2d 103 (La.App. 2nd Cir. 1955).
In his reasons for judgment the trial judge stated:
“The Court has no difficulty in arriving at the conclusion that defendant, O. J. Scallan, Jr., who was the driver of one vehicle, was negligent, and that his negligence was the cause of the accident forming the bases [sic] of this suit.”
We find that the evidence supports the trial judge’s finding that the defendant Scallan, failed in his duty to exercise extraordinary care in entering the favored street (Acton Road) after stopping at the T-intersection on Poret Drive, and that his negligence caused the accident.
Although the trial judge did not discuss the issue of contributory negligence in his written reasons for judgment, it is obvious that he concluded that plaintiff was not negligent in causing the accident. After carefully reviewing the record, we find that the evidence amply supports the trial court ruling that the accident was caused solely by the negligence of the defendant Scallan.
DAMAGES
The trial judge awarded plaintiff $3,500.00 for “added pain and suffering only” and denied all claims for special damages. We note at the outset that the damages issue presents a problem which is infinitely more complex than the one concerning liability.
Plaintiff was an extremely poor candidate for an automobile accident. Several years prior to the accident he underwent major cancer surgery which entailed the removal of a portion of his jaw and numerous muscles in his neck and right shoulder. Furthermore, he suffered from an extremely bad back, with disc problems at several levels and a general degenerative disc disease.
For some time prior to his accident plaintiff had been under the care of Dr. John Jackson, an orthopedic surgeon in New Orleans, Louisiana. On September 10, 1971, Doctor Jackson removed the D-3, L-4, L-5, and S-l discs from plaintiff’s back. At that time Doctor Jackson was of the opinion that the C-5 and C-6 discs also needed removal. However, due to plaintiff’s weak condition the surgeon felt that the cervical disc operation would have to be postponed until plaintiff was stronger. He testified, by deposition, as follows :
“Q. You didn’t find that was feasible to have both operations at the same time?
A. I thought that it was too much considering his age, to do both. Both are big operations and to put him through a double operation might be a little too much for him.”
Plaintiff contends that the November accident aggravated his back condition and precipitated the cervical disc operation. As did the trial judge, we find no merit in this argument. The second operation was already tentatively scheduled to be performed as soon as plaintiff had sufficiently recovered from the first one. Doctor Jackson further testified:
“Q. Would it be fair to say that you are not in a position to say that this man’s symptoms in the automobile accident of November 5, 1971, are related from the cause and effect standpoint ?
A. I can’t be 100% certain. I can say that he seemed to have more pain after the accident, but neurological *771 ly, I don’t think he was any different.” (Emphasis added)
Doctor Jackson was also of the opinion that had plaintiff been a young, strong individual both operations would have been performed at the same time (September 10, 1971), prior to the accident. Plaintiff’s claim that the accident aggravated his cervical disc condition and precipitated the operation thereon is simply unsupported by the evidence, and we find that the trial judge correctly denied any compensation therefor.
Doctor Jackson also found that plaintiff suffered from a degenerative disc disease and had been afflicted with that condition for some time. Plaintiff argues that the accident aggravated said condition and furthered the degenerative processes. When queried on this issue the only conclusion which Doctor Jackson could make was that a “possibility” existed that the accident had some effect upon the degenerative disc disease. However, considering the totality of the doctor’s testimony and without going into great detail on this matter, we find that the evidence is far too speculative to preponderate in plaintiff’s favor relative to this issue, and we therefore concur in the trial judge’s denial of any damages for said claim.
Shortly after the accident plaintiff complained continually of pains in and about his neck. On January 21, 1972, Doctor Jackson performed a second operation on plaintiff at which time he removed the C-5 and C-6 discs. Thereafter plaintiff continued to suffer from neck pains, but Doctor Jackson attributed such complaints to typical post-operative difficulties. However, on February 28, 1972, approximately one month after the operation, plaintiff continued to be plagued with difficulties in the neck area. At that time Doctor Jackson felt that plaintiff’s condition was not connected with the operation but found the difficulty to be muscular rather than spinal and concluded that said muscular condition was probably a resqlt of the November 5, 1971, accident. Plaintiff’s difficulty continued and on August 31, 1972, Doctor Jackson diagnosed his muscular condition as traumatic cervical fibromyositis. He thereafter referred plaintiff to Dr. Karl E. Keller, a specialist in internal medicine and rheumatology, who confirmed the diagnosis. Doctor Jackson described the ailment as follows:
“. . . .1 felt the diagnosis was a traumatic cervical fibromyositis, that means a traumatic—means due to trauma. Cervical fibromyositis means—cervical means referring to the neck, fibromyo-sitis means an inflammation of the muscles of the neck in which the fibrosis has occurred, the neck muscles, that’s call [sic] fibromyositis . . . ”
Stedman’s Medical Dictionary, Unabridged Lawyers’ Edition (1966) defines fibromyositis as a type of inomyositis which is “chronic inflammation of the muscle with an overgrowth, or hyperplasia, of the connective tissue.”
Dr. Emile Ventre of Opelousas, Louisiana, plaintiff’s family physician, who had treated him for many years testified that plaintiff exhibited no symptoms of fibro-myositis prior to the accident, and the physician concluded that said accident was the causation thereof. His testimony, coupled with that of Doctors Jackson and Keller, preponderates in plaintiff’s favor that the traumatic cervical fibromyositis condition was the result of the accident in which plaintiff was involved on November 5, 1971. We find, therefore, that the trial judge erred in his failure to award plaintiff damages for any medical expenses incurred in treatment of that condition. Although plaintiff is not entitled to all of the medical expenses which he claims, the evidence indicates that a certain portion of them bear a connexity to the traumatically induced fibromyositis.
Plaintiff was examined by Doctor Jackson on three occasions for the fibro- *772 myositis, February 28, 1972, July 7, 1972, and August 31, 1972. However, according to the physician’s records these examinations were made without charge to plaintiff, and we award no damages therefor. Approximately one year after the accident in question plaintiff was involved in a second serious collision in which his vehicle was struck from the rear by a truck. He was also struck in the head and neck area by a falling limb sometime in 1973. We feel that these accidents necessarily contributed to plaintiff’s condition and are of the opinion that any treatments which plaintiff received after August 31, 1972, cannot be fairly attributed to the November 5, 1971, accident.
Plaintiff received physical therapy at his home for a period of exactly one year, said treatments being prescribed by Doctors Ventre and Jackson for the fibro-myositis. These physical therapy sessions cost $4.00 each, and plaintiff has submitted a bill in the amount of $1,316.00 apparently for 329 treatments. Based upon Doctor Ventre’s testimony that plaintiff required therapy two or three times a week, we conclude mathematically that plaintiff is entitled to the amount of $624.00 for such therapy.
Additionally, we award plaintiff $10.00 for the examination given him by Dr. F. P. Bordelon of Marksville to whom plaintiff was taken immediately after his accident and further award him $50.00 for services of Dr. Carl E. Keller, the necessity of which was clearly related to the accident.
We also award plaintiff the sum of $55.-00 for examinations and treatment by Doctor Ventre on November 8, 1971, and November 11, 1971. These visits were shortly after the accident, and the evidence indicates that they were necessitated by the collision. Doctor Ventre treated plaintiff for exactly three years after the accident for various neck ailments. These ailments included the cervical disc difficulty, the degenerative disc disease as well as the fibro-myositis. Since all of Doctor Ventre’s charges for these various conditions are integrated we find it impossible to determine from the record exactly which treatments were for the fibromyositis and which were for other difficulties. We conclude therefore that plaintiff has failed in his burden to demonstrate which of Doctor Ventre’s other charges were related to the fibro-myositis caused by the November 5, 1971, accident, and consequently deny recovery therefor. We likewise reject plaintiff’s claim for damages for laboratory work performed on January 10, 1972, by Doctor Ventre. This work was done at Doctor Jackson’s request and was intended in preparation for plaintiff’s disc operation of January 21, 1972, to which we have already determined the accident was inconsequential.
The evidence indicates that plaintiff’s fibromyositis ailment cleared up prior to the time of the commencement of this litigation. It is apparent that the trial judge considered the fibromyositis condition in determining the extent of plaintiff’s award for general damages for pain and suffering. After reviewing the particular circumstances of this case in light of the broad discretion which must be accorded the trier of fact in assessing such damages pursuant to LSA-C.C. Article 1934(3), we feel that the trial judge’s award of $3,500-00 for general pain and suffering is neither excessive nor inadequate.
For the above and foregoing reasons the judgment of the trial court is amended so as to increase the damages awarded plaintiff from $3,500.00 to $4,239.00, so as to include the above mentioned medical expenses, and as thus amended is affirmed. Costs of this appeal are assessed against the defendants-appellees.

AFFIRMED AS AMENDED.

MILLER, J., concurs and asigns written reasons.