357 So.2d 849 (1978)
Robert S. ROBICHAUX, Sr.
v.
Michael CADE and the Travelers Insurance Company.
No. 8899.
Court of Appeal of Louisiana, Fourth Circuit.
March 14, 1978.
*850 William F. Ryan, New Orleans, for plaintiff-appellant.
Paul P. Rutledge, Metairie, for defendants-appellees.
Fernand F. Willoz, III, in pro per.
Before BOUTALL, SCHOTT and GARSAUD, JJ.
SCHOTT, Judge.
Plaintiff has appealed from a judgment claiming that the general damage award of $6,000 and $1,704 for loss of earnings for 13 weeks were inadequate. There is also an issue raised by way of an intervention into these proceedings by the attorney who represented plaintiff in the trial court and whose employment was terminated after the judgment was obtained.
Plaintiff sustained the injury in an accident which occurred on April 5, 1971. By the time of the trial in January, 1977, he testified that he was and had been since the time of the accident in constant pain, and attempted to prove that his suffering was a result of the accident. It was established that plaintiff had a moderate to severe cervical strain. The trial judge concluded that this had been resolved within six months after the accident, but plaintiff contends that he suffered a permanently disabling aggravation of arthritis in his cervical spine which has caused him so much pain.
On the day after the accident plaintiff saw his own general physician, Dr. Casimir A. DiCristina, who found spasm and associated pain in his neck. He treated plaintiff with medication and heat treatments until July, 1971, when he felt that plaintiff improved satisfactorily, would gradually become free of symptoms and discharged him, although plaintiff was still complaining of such pain.
*851 In May, 1971, plaintiff was examined by Dr. G. Gernon Brown, Jr., an orthopedist, who found no spasm, a normal lordotic curve and full range of motion although plaintiff complained of pain on motion and when pressure was applied to the back of his neck. However, there was evidence of spondylosis or arthritis of the cervical spine which Dr. Brown felt was unrelated to the accident and of many years standing. He did allow that it was possible for a patient to have such a condition with no symptoms and to have symptoms develop after a trauma.
Plaintiff saw Dr. George Byram, an orthopedist, in July, 1971, and he found limitation of motion with muscle spasm in plaintiff's neck. He also found the evidence of arthritis which he thought pre-dated the accident. In his opinion the accident aggravated the arthritis and conversely the arthritis delayed his recovery to some extent. He did not think it was unusual for injuries such as this to take three to six months, or even longer, to clear up, but he thought that plaintiff would have no permanent damage "although he may have some slight difficulty with his neck from time to time."
On August 18, 1971, plaintiff went to a chiropractor who reported in September that "adjustments" were being given to him on a continuing basis. This chiropractor did not testify.
In April, 1974, plaintiff saw Dr. Don Lee Bradke. He took a history of dizziness, headache and stiffness from plaintiff who related these to the accident three years earlier. He found limitation of motion in the neck and stiffness in the muscles, and X-rays showed the aging of the cervical spine. He put plaintiff in the hospital from May 8 to May 16 where a myelogram was performed. This revealed the arthritis in his cervical spine for which conservative treatment, such as sedation, traction, neck exercises, muscle relaxants and analgesics were prescribed. Plaintiff was not seen again by this doctor after May, 1974. The doctor admitted the possibility that the patient would have no subjective symptoms from this kind of arthritis prior to an accident and that such an accident would aggravate the condition to the point where he suffered pain, but in the final analysis any opinion would rest largely on the patient's own statements as to whether he was in pain before the accident or not.
In evaluating the adequacy of plaintiff's award, his case depends in large measure on his own testimony which the trial court found to be exaggerated. For instance, plaintiff testified that he regularly handled as a butcher sides of meat weighing in excess of 150 pounds, but his supervisor testified that if this happened it was on rare occasions because of his age (63 at the time of the accident) and he did not ask plaintiff to do any heavy work. The trial judge detailed at some length the exaggerations and misstatements made by plaintiff while on the witness stand, and he was influenced by this behavior. Our review of the testimony leads us to agree completely with the trial judge on this point. In the final analysis, the question of whether plaintiff was suffering any pain before the accident or not can only be resolved from his own testimony.
Especially considering the testimony of his treating physician and Dr. Brown, the orthopedist, we cannot say that plaintiff carried his burden of proving that he suffered an aggravation of pre-existing arthritis which caused the amount of pain he claimed to be suffering at the time of the trial and in the interlude between the date of the accident and the date of the trial. The trial judge concluded that plaintiff had a six month injury and we agree. We cannot say that the $6,000 award was an abuse of the court's discretion. Anderson v. Welding, Testing Laboratory, Inc., 304 So.2d 351 (La.1974), Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977).
On loss of wages, the trial court awarded $1,704.56 which was based on his full pay with overtime for 13 weeks or three months. The trial court made this award on the basis of the fact that Dr. DiCristina discharged plaintiff after three months and he concluded that had plaintiff *852 been motivated to do so he could have performed the type of light work he was doing before the accident. It should be pointed out here that plaintiff was already 63 years old at the time of this accident and his supervisor made it clear that he was not expected to work as hard as a younger man. He was assigned as a saw operator and was never expected to lift heavy things and to do the work of a younger man. To read plaintiff's testimony you would think he had performed extremely heavy work before the accident, but his testimony on this point was completely contradicted by his supervisor. Furthermore, this supervisor indicated that in the nine months that he worked at the meat market there was some talk at one time with the manager about discharging plaintiff because he was not doing his job properly. The plaintiff produced an economist who testified that plaintiff's work life expectancy as a butcher in this accident at age 63 was 11.1 years and projected loss of earnings on that basis. Aside from the fact that plaintiff did not prove that he was unable to go back to the kind of work he was doing before the accident three months thereafter, we cannot accept the testimony of this economist that this man who had such a severe case of arthritis that he was already limited in his work ability before the accident would probably work until he was 74 years old. We see no error in the trial judge's conclusion with respect to lost wages.
The final issue before us in the intervention of plaintiff's former attorney. Fernand Willoz, III.
The record shows that plaintiff's suit was filed in January, 1972, by his first attorney who was replaced by a second attorney in November, 1974. In the meantime, the case was scheduled for trial in May, 1974, witnesses were subpoenaed but the case was continued indefinitely on that day. The second attorney represented plaintiff until August 31, 1976, when Mr. Willoz became attorney of record. In the meantime, the case had been scheduled for trial on April 2, June 18 and November 20, 1975, when it was continued indefinitely. Mr. Willoz tried the case on January 5 and 6, 1977, and in March was replaced by the present counsel who perfected this appeal. When the motion to substitute counsel of record was filed in the trial court Willoz reserved his rights to his attorney's fee and filed in the record a contingent fee contract between him and plaintiff, dated April 19, 1976, wherein he was employed to represent plaintiff on the contingent fee of 1/3 of any sums recovered by settlement, compromise or judgment.
After the appeal was lodged in this court Willoz filed a petition of intervention, asking that we recognize his right to be paid the fee of 1/3 stipulated in the contract along with the court costs expended by him. He also prayed alternatively that the case be remanded to the district court for further proceedings in connection with his fee. We have concluded that Willoz was entitled to intervene considering LSA-C.C.P. Art. 1091 which provides:
"A third person having an interest therein may intervene in a pending action to enforce a right related to or connected with the object of the pending action. . ."
See also C.C.P. Art. 2086.
However, in October plaintiff addressed a long letter to this court contesting Willoz' right to the fee, and we have concluded that plaintiff is entitled to a hearing in order to assert whatever defenses he may have to the claim for the attorney's fee. Consequently, the intervention will be remanded to the district court for trial. In the meantime, it appears that Willoz has complied with the provisions of LSA-R.S. 37:218 in order to protect the privilege he has under R.S. 9:5001 on the amount ultimately recovered by plaintiff in these proceedings.
Since Willoz' claim is limited to one-third of the amount of the judgment plus costs, defendants may deposit this amount in the registry of the district court and pay the difference to plaintiff after his judgment becomes final.
Accordingly, the judgment appealed from is affirmed. The intervention of Fernand *853 Willoz, III, is remanded to the trial court and his privilege on plaintiff's judgment is recognized and maintained pending the establishment of his claim for an attorney's fee against plaintiff at the trial of the intervention.
AFFIRMED
ATTORNEY'S PRIVILEGE RECONIZED
REMANDED FOR TRIAL OF INTERVENTION