359 So.2d 1080 (1978)
Gary W. WILLIS, Plaintiff-Appellee,
v.
Kenneth G. EVERETT et al., Defendants-Appellants.
No. 6498.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1978.
Rehearings Denied July 5, 1978.
*1082 Raggio, Farrar, Cappel & Chozen, Thomas L. Raggio, Lake Charles, for defendants-appellants.
Russell T. Tritico, Lake Charles, David W. Burton, III, and William C. Pegues, DeRidder, for plaintiff-appellee.
Before GUIDRY, FORET and CUTRER, JJ.
GUIDRY, Judge.
Plaintiff, Gary W. Willis, sustained severe personal injuries while operating a motorcycle when he was involved in an intersectional collision with an automobile being driven by Curtis Everett, the minor child of Kenneth G. Everett. He brought the instant suit against Kenneth G. Everett, his liability insurer, Government Employee's Insurance Company (GEICO) and the Beauregard Parish Police Jury (Police Jury) alleging negligence on the latter's part in failing to maintain a stop sign at the intersection where the accident occurred and in failing to remove visual obstructions at said intersection. Defendants filed answers denying liability and alleging contributory negligence on the part of plaintiff. Defendants further sought indemnity and/or contribution from each other by way of third party demands.
Trial on the merits was had on September 8 and 9, 1975 before the late Judge Stuart S. Kay, Sr., who died before rendering a decision. The Honorable Ted R. Broyles, on the basis of a transcript of the record, rendered judgment in favor of plaintiff and against defendants Everett and GEICO, finding that the sole proximate cause of the accident was the failure of Curtis Everett to maintain a proper lookout and proper control of his vehicle. He found the Police Jury guilty of negligence in failing to maintain the stop sign at the intersection, but concluded that such negligence was not a proximate cause of the accident considering young Everett's inattentiveness to his driving. Accordingly, the demands against the Police Jury were dismissed.
Following denial of all motions for a new trial, Everett and GEICO took this appeal. Plaintiff answered the appeal seeking an increase in the quantum awarded and reversal of that portion of the trial court's judgment which rejected his demands against the Police Jury.
The issues presented on appeal are:
(1) Was Curtis Everett guilty of negligence which was a proximate cause of the accident?
(2) Was plaintiff guilty of negligence which was a proximate cause of the accident?
(3) Was the Police Jury guilty of negligence which was a proximate cause of the accident?
(4) Were the damages awarded to plaintiff inadequate?
The record discloses no genuine dispute as to the following facts:
The accident occurred at approximately 11:15 P.M., May 18, 1974 at the intersection of Glendale Road (also know as High School Drive Extension) and Planer Mill Road in a rural portion of Beauregard Parish. Both of these roads are under the jurisdiction of the Police Jury. A parish ordinance fixes a speed limit of 45 mph on all parish roads. Weather conditions were described as clear. Planer Mill Road has a dirt and gravel surface and runs generally north and south. Glendale Road runs generally east and west and is hard-surfaced, having been blacktopped a few months prior to the time of this accident. Prior to this blacktopping, the surface of Glendale Road was similar to that of Planer Mill Road. There is an embankment located on the southwest corner of the intersection which is elevated slightly higher than the roadway. Underbrush and weeds located on this corner constituted a visual obstruction to motorists proceeding east on Glendale Road and also to motorists heading north on Planer Mill Road. Although there was no ordinance establishing either of these streets as having the "right-of-way" over the other, for several years *1083 prior to the accident, stop signs had been placed at the intersection by the Police Jury requiring traffic proceeding on Planer Mill Road to stop at the Glendale intersection. At the time of the accident, the stop sign which was usually located at the southeast corner of the intersection (facing traffic proceeding north on Planer Mill Road) was down.
Immediately prior to the accident, plaintiff was proceeding in an easterly direction on Glendale Road on his brother's Honda 350 motorcycle. Curtis Everett, then seventeen years of age, was operating his father's 1969 Pontiac in a northerly direction on Planer Mill Road. He intended to execute a right turn onto Glendale Road upon reaching the intersection. The record reflects that the two vehicles entered the intersection almost simultaneously. As near as could be determined, the impact occurred in the center of the intersection.
Judge Broyles, in written reasons, concluded that motorists on Glendale Road had the right-of-way over motorists traveling on Planer Mill Road even in the absence of an ordinance on the part of the Police Jury establishing such right-of-way.
Appellants assign error to this finding. It is appellant's contention that in the absence of an appropriate ordinance and in the absence of a stop sign being actually in place at the intersection at the time of the accident, this intersection must be considered as uncontrolled with the right-of-way being in favor of Curtis Everett who was approaching the intersection from plaintiff's right. LSA-R.S. 32:121[1]; Carney v. State Farm Mutual Automobile Insurance Company, 335 So.2d 759 (La.App. 3rd Cir. 1976); Neal v. Davenport, 270 So.2d 617 (La.App. 2nd Cir. 1972); Byers v. Creel, 198 So.2d 739 (La.App. 4th Cir. 1967). In further support of their contention, appellants refer this Court to several cases as authority for the proposition that differences in road composition and disproportionate flow of traffic or usage will not confer a right-of-way.[2]
We conclude that the district judge was correct in his determination that Glendale was the favored street and that plaintiff had the right-of-way as he approached this intersection. While we have given due consideration to the jurisprudence cited by appellants, we are of the opinion that in the instant case one cannot ignore the fact that plaintiff was proceeding on a hard-surfaced, blacktopped highway as opposed to the dirt and gravel surface of Planer Mill Road. See Doucas v. Universal Underwriters Insurance Co., 334 So.2d 767 (La.App. 3rd Cir. 1976). The fact that the improvements which converted Glendale Road into a hard-surfaced highway were completed only a short time prior to the accident do not alter the fact that Glendale was the superior road on the date of the accident.
We attach even more significance to the fact that stop signs requiring motorists proceeding on Planer Mill Road to stop before entering Glendale Road had been erected at this intersection at the direction of the Police Jury for several years prior to the accident, although there was no ordinance establishing Glendale Road as having the right-of-way over Planer Mill Road. In fact, the stop sign facing southbound traffic on Planer Mill Road was in place on the northwest corner of the intersection at the time of the accident. Ms. Herrington, Parish Treasurer and Secretary to the Police Jury, testified that it was a customary practice *1084 to set up stop signs without passing an ordinance and that there are other streets that have signs protecting them without any ordinances having been formally passed by the Police Jury.
We hold that where stop signs or other traffic control devices are erected at the direction of an appropriate governmental authority and are thereafter maintained by such authority for a substantial period of time, a post-accident determination that there was no corresponding ordinance in effect will not strip the affected highway of its favored status. Motorists should not be allowed to collaterally attack the legal authority by which such traffic control devices are erected. See Dufore v. Daugereaux, 122 So.2d 666 (La.App. 1st Cir. 1960).
Concerning the effect of the absence of the stop sign facing northbound traffic on Planer Mill Road at the time of the accident, recently in Jenkins v. City of Alexandria, 324 So.2d 924 (La.App. 3rd Cir. 1975, writ refused) we set forth the applicable law as follows:
"The law is settled that where a street has been properly designated as a right-of-way street, and appropriate signs showing it to be such have been erected, the preferred status of that street will not be lost merely because a stop sign is misplaced, improperly removed, destroyed or obliterated. Fontenot v. Hudak, 153 So.2d 120 (La.App. 3 Cir. 1963); Kinchen v. Hansbrough, 231 So.2d 700 (La.App. 1 Cir. 1970); Ory v. The Travelers Insurance Company, 235 So.2d 212 (La.App. 4 Cir. 1970). Dillman v. Allstate Insurance Company, 265 So.2d 322 (La.App. 4 Cir. 1972)."
For the above reasons we conclude that Glendale Road was the "favored street" with motorists proceeding thereon having the right-of-way over traffic on Planer Mill Road at the intersection.
Curtis Everett testified that on the night of the accident he was taking his date home after having previously left a high school prom. He was vaguely familiar with the intersection, but had never been in an automobile traveling north on Planer Mill Road towards the Glendale intersection prior to the accident. They were on Planer Mill Road that night because his date had told him that it would be the shortest route to her home. As they were proceeding north on Planer Mill Road, Everett was looking for the Glendale intersection as he intended to execute a right turn onto Glendale Road upon reaching it. However, he was not looking for any stop sign as he was unaware that any such traffic control device had ever been placed at the intersection. His testimony was to the effect that he was proceeding in a careful manner and paying proper attention to his driving but that he found himself in the intersection before he realized he was there and only saw the motorcycle headlight a split second before the impact. He estimated his speed prior to the accident at 20 to 25 m. p. h. Everett's testimony in this regard was generally corroborated by that of his date.
The district judge's finding of negligence on the part of Everett was based primarily on an admission allegedly made by him to the investigating officer at the scene of the accident that he was momentarily distracted by his passenger and didn't realize that he was in the intersection. At trial, Everett denied making any such statement.
We find no error in the district court's finding that Curtis Everett was guilty of negligence. The record indicates that he entered a hazardous intersection without slackening his speed or making any observations concerning approaching traffic. Although Everett cannot be charged with knowledge of the fact that stop signs had previously been erected facing his direction of travel on Planer Mill Road or that one of the signs was down, it is clear that he knew the intersection was in front of him and in fact, was searching for it. The only plausible explanation for his failure to see the intersection ahead of him, especially considering his slow rate of speed, is that he was inattentive.
Under these circumstances, Everett cannot rely on a statutory right-of-way to justify his entry into the Glendale intersection. *1085 In Gutelius v. Phoenix Insurance Company, 266 So.2d 717 (La.App. 4th Cir. 1972, writ refused), the court stated:
"The so-called directional right-of-way rule does not convert the street into a superior one, having the right-of-way; nor is it a mechanical rule which determines liability after an accident by the mere direction of the vehicles. Its basic function is to rule which of two drivers arriving simultaneously at an uncontrolled intersection of equal streets should let the other pass. Before this rule can be relied on, the driver must first determine that the other driver is coming from his left and is approaching or entering the intersection at about the same time. These determinations one cannot reasonably expect to make while maintaining speed, especially on approaching a blind intersection."
See also Ory v. Travelers Insurance Company, 235 So.2d 212 (La.App. 4th Cir. 1970). For the above reasons, we find no error in the district judge's determination that Curtis Everett was guilty of negligence which was a proximate cause of the accident.
Plaintiff had previously driven on Glendale Road both during the day and at night. Although he was aware of its intersection with Planer Mill Road, he did not know that stop signs had been placed at said intersection facing motorists on Planer Mill Road. Plaintiff testified that on the night of the accident, he was headed home having just completed the 3:00 P.M. to 11:00 P.M. shift at the Boise Southern plant. The intersection in question is located approximately one and one-half miles east of Boise Southern. Plaintiff's home is located about three miles further east of the intersection. Although he was aware that the Planer Mill Road intersection was ahead of him, he wasn't paying any extra attention to it. He was not consciously aware that there was a blind corner at the intersection.
Plaintiff testified that he thought he had the right of way and did not slow down or activate his brakes as he approached the intersection. He didn't realize that the Everett vehicle was also approaching the intersection until a fraction of a second before the impact when he saw lights flash. He estimated his speed prior to the accident at from 35 to 50 m. p. h.
Both appellants and the Police Jury contend that as plaintiff was unaware of the prior existence of the stop signs at the Planer Mill Road intersection, he is unable to presume that traffic on the intersecting street will observe said stop signs and yield the right-of-way. Centanni v. Fleming, 203 So.2d 904 (La.App. 4th Cir. 1967).
It is our conclusion, however, that although plaintiff by his own testimony, was not relying on the protection of any traffic control devices facing traffic on Planer Mill Road, he could presume that traffic approaching from intersecting inferior streets would yield the right of way to him. In American Road Insurance Company v. Glynn, 184 So.2d 556 (La.App. 3rd Cir. 1966), plaintiff's insured, Thomas, was proceeding eastward on a right-of-way street when he observed another vehicle approaching from the south on an inferior road which dead-ended at the intersection. This court allowed recovery in the cited case, stating:
"Plaintiff's insured, Thomas, proceeding on a favored street, had a right to assume that his right-of-way would be respected by Mrs. Glynn, who was approaching on the inferior side road; and, that her sudden imprudent entry into his path created a sudden emergency of her sole causing, so that any subsequent error of judgment on his part does not bar his recovery. See Welch v. Welch, (La.App., 4 Cir., 1964), 169 So.2d 713. In the Welch case, supra, the court stated:
`Our settled jurisprudence is to the effect that a motorist who is driving at a reasonable speed on a right-of-way street had a right to assume that a driver approaching from a less favored street will stop for the intersection and yield the right-of-way; the motorist on the right-of-way street has the right to indulge in this assumption until he sees, or should see, that the other car has not observed or is not going to observe the law. * * *'" *1086 See also Doucas v. Universal Underwriters Insurance Co., supra.
Although the intersection in the instant case is not a "T" intersection, we believe the rule of law expressed above nevertheless to be applicable, considering the favored status of the road on which plaintiff was traveling. A motorist, proceeding on a main highway should not be required to slow his vehicle and peer down each and every side road which he encounters. Plaintiff was justified in presuming that he had the right-of-way. Accordingly, we find no error in the district court's conclusion that plaintiff was free from negligence.
We concur with Judge Broyles' determination that the Police Jury was guilty of negligence in failing to maintain the stop signs previously erected by it at the intersection. The record reflects that the Police Jury had no reliable inspection system for ascertaining whether traffic control devices within its jurisdiction were in need of repair or replacement. The Police Jury relied mainly on its road grader operators and local residents to report or replace downed signs. The evidence indicates that this particular intersection had a prior history of missing or downed signs. The Police Jury Road Foreman, Mr. Davis, was aware of the brush and weeds which were located at the intersection. The Police Jury maintains that it had no actual knowledge of the sign being down, however, the evidence supports the district judge's finding that the sign in question had been down for as long as two weeks. Considering the hazardous nature of the intersection, together with its prior history of downed or missing signs we conclude that the Police Jury had constructive notice of the sign being down. See Jones v. Louisiana Dept. of Highways, 338 So.2d 338 (La.App. 3rd Cir. 1976).
However, we cannot agree with the district court's ultimate conclusion that the negligence of the Police Jury in not maintaining the sign was not a proximate cause of this accident. While it is true that neither of the drivers in the instant case were looking for or relying on the existence of stop signs at the intersection, it must be presumed that had the sign been in place to warn Everett of the intersection, that he would have obeyed it. Vallot v. Touchet, 337 So.2d 687 (La.App. 3rd Cir. 1976); Funderburk v. Temple, 268 So.2d 689 (La.App. 1st Cir. 1972, writ refused). The slow speed of the Everett vehicle coupled with the fact that he was looking for this very intersection further bolsters our conclusion that a stop sign would have sufficiently caught his attention so as to alert him to the intersection. Although Everett may have been momentarily inattentive, his headlights would have illuminated the stop sign from some distance down Planer Mill Road.
The Police Jury, by undertaking to place traffic control devices at an intersection owes a duty to the traveling public to maintain these devices in proper order. In Funderburk v. Temple, supra, the court stated:
"The law imposes a high degree of care on the part of governmental agencies charged with the responsibility of maintaining traffic signs, signals and other vehicular control devices. McDaniel v. Welsh, La.App., 234 So.2d 833. Failure of a governmental agency to repair a damaged, nonfunctioning or malfunctioning traffic signal, sign or control device, after reasonable notice, either actual or constructive, constitutes negligence rendering the responsible government agency liable for all reasonably foreseeable accidents occurring as a result thereof. McDaniel v. Welsh, above."
It is our conclusion that the Police Jury's failure to maintain the stop sign at the intersection in question was a proximate cause of the accident rendering the Police Jury liable with Everett and GEICO for the injuries sustained by plaintiff.
The only remaining issue concerns the sufficiency of the quantum award. The accident resulted in massive injuries to plaintiff's right leg. Dr. Edmond C. Campbell, an orthopedic surgeon, first saw plaintiff in the emergency room at St. Patrick's *1087 Hospital in Lake Charles, Louisiana on the morning of May 19, 1974. His initial diagnosis of plaintiff's injuries was a compound comminuted fracture of the upper third of the right tibia, a compound fracture of the upper one-fourth of the right fibula, massive damage to the muscles in the anterior (front) compartment of the leg and damage to skin over this part of the leg. The most severe area of injury was to the soft tissues over the tibia, the muscles being damaged to the extent that after debriding of damaged tissue, plaintiff had practically no muscle left in the anterior compartment of his leg.
Plaintiff was initially hospitalized for a period of 24 days. He was given considerable narcotic drugs during this time for his painful injuries. At first, his leg was splinted from the groin down to and including his foot. His first cast was later applied on June 5, 1974. Plaintiff was subsequently hospitalized for cast changes and debridement. Plaintiff remained in a cast which extended up to the groin area until January of 1975 when he was fitted with a brace (covering from the thigh down to just above the ankle). At the time of trial, plaintiff had been hospitalized for a total of 46 days on various occasions. He was plagued with drainage from the wound which was caused by a low grade infection at the fracture site. Most of his initial drainage was over the front of the tibia.
At the time that Dr. Campbell's deposition was taken, a surgical procedure to place a full thickness skin graft over plaintiff's tibia was contemplated. This involves transferring a flap of skin from his good leg and will require the two legs to be actually joined together with a cast during this period.
If the skin grafting procedure is successful, then a bone grafting procedure may be performed. This will entail removing the scar tissue from between the fracture fragments and probably placing a plate in this area. Bone grafts taken from his pelvis will be placed around the fracture site in an attempt to promote healing.
Concerning the prognosis for the future, Dr. Campbell stated:
"Q. Even assuming that the best that you can hope for in this case does take place, what do you feel that his disability will consist of?
A. If he gets solid bony healing of the fracture of his tibia, he will have some damage to his knee joint from the prolonged immobilization which will lead to some arthritis of the knee. A more serious disability is his inability to lift his foot and his toes, due to loss of muscle in the anterior compartment of his leg. This in itself might require some surgical procedure or at best would require him to wear a brace to support his ankle.
Q. Well, all of these things are based first of all on the bone situation reaching a better stage than it is now, and the skin healing up and assuming, again, that all of these procedures would work fine, do you think in your best medical opinion this boy will ever have the full use of his right leg?
A. No, sir. At best, I would feel that he would have at least a 60 percent disability to his right lower extremity.
Q. At least 60 at best?
A. Yes.
Q. And if things
A. That may require another year of treatment.
Q. And if things don't go as well as hoped for, to what extent could that disability amount to of the right leg?
A. Well, if we don't get his tibial fracture healed, I think the alternative would be an amputation which could probably be below the knee but could possibly even be above the knee."
Judge Broyles awarded plaintiff the sum of $25,000.00 "for the injuries sustained and disabilities resulting therefrom" and an additional $15,000.00 for past and future *1088 medical expenses. The liability of GEICO was restricted to the policy limits of $25,000.00. In determining the amount of the award, Judge Broyles gave consideration to the limits of the GEICO policy along with evidence concerning defendant Everett's inability to pay an excess judgment. In this latter regard, he stated in written reasons:
"I am also aware of the probable inability of defendant Everett to respond to a judgment substantially in excess of $15,000.00, at least according to the proof submitted . . . Were it not for these considerations, a higher award covering loss of earnings and other items of damages would be allowed."
We are of the opinion that an award of $40,000.00 to this plaintiff is woefully inadequate. Plaintiff was 22 years old at the time of this accident. The evidence supports the district judge's statement that "The accident converted a steadily employed man into a mere invalid which understandably had acutely adverse effect on his marriage and his life." As of the date of trial, plaintiff has been unemployed since the accident.
In light of our conclusion that the Police Jury was guilty of negligence which was a proximate cause of the accident, and thus solidarily liable with defendants Everett and GEICO, we will adjust the quantum award upward in order to better compensate plaintiff for his injuries. It is our conclusion that an award of $80,000.00 for both special and general damages will do substantial justice to the plaintiff.
For the above and foregoing reasons, the judgment of the district court dismissing plaintiff's demands against the defendant Police Jury is reversed and it is now ordered, adjudged and decreed that there be a judgment in favor of plaintiff Gary W. Willis and against defendants Beauregard Parish Police Jury, Kenneth G. Everett and Government Employees' Insurance Company, in solido, in the amount of $80,000.00 with legal interest from date of judicial demand until paid. It is further ordered, adjudged and decreed that the liability of Government Employees' Insurance Company is restricted to its policy limits of $25,000.00. Further, the judgment of the trial court dismissing the third party demand of Kenneth G. Everett and Government Employees' Insurance Company against the Police Jury is reversed and judgment is rendered granting the respective third, party demands of the defendants awarding each contribution from the other for any amount either may pay in satisfaction of said judgment over and above their respective virile shares, i. e., one-half of the full amount of the judgment, subject however to the liability of Government Employees' Insurance Company being restricted to its policy limits. Costs at the trial level and on appeal are to be borne one-half by Kenneth G. Everett and Government Employees' Insurance Company and one-half by Beauregard Parish Police Jury.
REVERSED IN PART, AMENDED IN PART AND RENDERED.
NOTES
[1] LSA-R.S. 32:121 provides as follows:

"A. When two vehicles approach or enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left, shall yield the right of way to the vehicle on the right.
B. The right of way rule declared in Subsection A is modified at through highways and otherwise as hereinafter stated in this part."
[2] Combel v. Webster, 315 So.2d 338 (La.App. 4th Cir. 1975); Zito v. Kuhn, 309 So.2d 806 (La.App. 4th Cir. 1975); Becken v. Stonewell Insurance Co., 275 So.2d 470 (La.App. 2nd Cir. 1973); State Farm Mutual Automobile Insurance Company v. Niagara Fire Insurance Co., 183 So.2d 145 (La.App. 1st Cir. 1966, writs refused); Lambright v. Aetna Casualty & Surety Company, 258 So.2d 100 (La.App. 2nd Cir. 1972, writs denied).