419 So.2d 479 (1982)
James BURROW, et al, Plaintiffs-Appellants,
v.
COMMERCIAL UNION ASSURANCE COMPANIES, et al, Defendants-Appellees.
No. 82-89.
Court of Appeal of Louisiana, Third Circuit.
July 2, 1982.
Rehearing Denied September 28, 1982.
*482 Raleigh Newman, Lake Charles, for plaintiffs-appellants.
Brame, Bergstedt & Brame, David A. Fraser, Raggio, Cappel, Chozen & Berniard, Stephan A. Berniard, Jr., Gregory W. Belfour and Eugene A. Bouquet, Stockwell, Sievert, Viccellio, Clements & Shaddock, Robert S. Dampf and John S. Bradford, Lake Charles, for defendants-appellees.
Woodley, Barnett, Cox, Williams & Fenet, Robert W. Fenet, Lake Charles, for defendant-appellant.
Before FORET, STOKER and DOUCET, JJ.
STOKER, Judge.
This case arises out of a two car accident between plaintiff-appellant, Jeannie Burrow Fontenot (Fontenot), and defendant-appellee, Elizabeth Miller (Miller), which occurred on May 16, 1979, at the intersection of Avenue H and Fourth Street (now Egret Street) within the city limits of Lake Charles, Calcasieu Parish, Louisiana.[1] Fontenot, who was a minor at the time of the accident, and her father, James Burrow, seek to recover their damages resulting from the accident from Miller and her husband, Hershey Miller, Jr., and their insurer, American Employers Insurance Company (incorrectly named in the petition as Commercial Union Assurance Companies), as well as from the Calcasieu Parish Police Jury and its insurer, United States Fidelity and Guaranty Company, and the City of Lake Charles. The Millers reconvened against the plaintiffs and filed a petition of intervention against the Calcasieu Parish Police Jury and its insurer and the City of Lake Charles. Various other reconventional and third party demands were filed by the parties.
On the morning before trial, the plaintiffs Fontenot and James Burrow settled with the City of Lake Charles, reserving all rights as to other parties. The attorney for the Millers and American Employers Insurance Company, upon being informed of the settlement, orally entered an alternative claim for contribution and/or indemnity against the City of Lake Charles in the event of judgment in favor of the plaintiffs against the Millers. This pleading, made orally in open court at the beginning of the trial, was accepted by the attorneys for the City of Lake Charles, who entered an oral answer of general denial to this oral pleading, accepted service of process of the pleading, and waived any delays or irregularities concerning the setting of this case for trial before answers were filed. (Tr. 374-375). After trial on the merits, the trial court rendered judgment in favor of Hershey Miller and American Employers Insurance Company against James Burrow, Fontenot, and the City of Lake Charles, in solido, for the amounts paid for the damages to Hershey Miller's automobile. All demands against the Calcasieu Parish Police Jury were dismissed. Plaintiffs appeal this judgment.

FACTS
Fontenot was driving east on Avenue H, and Miller was driving north on Fourth Street when their vehicles collided. Both streets are two-way, two lane streets. There was a stop sign controlling traffic traveling south on Fourth Street, but there was no sign on Fourth Street going north, the direction in which Miller was traveling. The trooper who investigated the accident testified that there was a hole and fresh dirt where he surmised the stop sign controlling the northbound traffic on Fourth Street once was. Avenue H had no stop signs and there was no evidence that there were ever any stop signs controlling Avenue H at that intersection. The two roads appeared to be equal and there was no ordinance establishing one road as having the right-of-way over the other. A large bush was located on the south-west corner of the intersection.
*483 Miller testified that she was unfamiliar with the intersection before the accident and therefore was traveling at 10 to 15 miles per hour. She claims that she came to a complete stop before the collision. The trooper investigating the accident, however, estimated the speed of both vehicles to be near 30 miles per hour and found that Miller's car struck Fontenot's car broadside. Miller stated that she did not see stop signs on either corner of Fourth Street although the trooper stated that the back of the sign controlling the southbound lane of Fourth Street was clearly visible from the opposite corner.
Fontenot was in a coma for several days as a result of the accident and, therefore, could not recall anything about the accident itself. However, she stated that she knew that Avenue H had the right-of-way because cars on intersecting roads had stopped for her when she had travelled on Avenue H previously. Fontenot's passenger at the time of the accident, Karen Smith, testified that the intersection was obscured by the bush as well as by other shrubs and tall grass, and that by the time she saw the Miller car approaching the intersection, she had no time to warn Fontenot. Karen Smith stated that Miller's car struck Fontenot's car on the right passenger side and did not stop before the impact.

WAS FONTENOT NEGLIGENT?
Plaintiffs allege that the trial court erred in finding Fontenot to be guilty of negligence in the causation of this accident. Plaintiffs allege that Fontenot was traveling on the favored street under the standard set forth in Willis v. Everett, 359 So.2d 1080 (La.App. 3rd Cir. 1978), writ denied, 362 So.2d 800 (La.1978), and that therefore, Fontenot was not negligent under the standard set forth in Morgan v. Allstate Insurance Company, 393 So.2d 324 (La.App. 1st Cir. 1980).
The trial court found that Avenue H was not the favored street over Fourth Street because the streets were identical in appearance and there was no ordinance designating one of the streets as the favored street. However, the lack of such an ordinance does not affect the status of Avenue H in this case. In Willis v. Everett, supra, we stated:
"We hold that where stop signs or other traffic control devices are erected at the direction of an appropriate governmental authority and are thereafter maintained by such authority for a substantial period of time, a post-accident determination that there was no corresponding ordinance in effect will not strip the affected highway of its favored status. Motorists should not be allowed to collaterally attack the legal authority by which such traffic control devices are erected. See Dufore v. Daugereaux, 122 So.2d 666 (La.App. 1st Cir. 1960)."
There is ample evidence that there was once a stop sign in place controlling the northbound traffic on Fourth Street, as shown by the existence of a sign on the opposite corner of the street and of the hole where the missing sign should be. These signs were erected either by the authorities at Chennault Air Force Base which once occupied the property, or by the appropriate governmental authorities of Calcasieu Parish or of the City of Lake Charles. The authority under which the signs were erected, however, is not as important as the fact that the signs were subject to the maintenance of the Lake Charles authorities at least from November 3, 1976, as shown by a plat of the area containing the intersection introduced into evidence which shows that the area was within the city boundaries as of that date.
As to the effect of the fact that the stop sign facing northbound traffic on Fourth Street was missing, the applicable law was set forth also in Willis v. Everett, supra, which quoted the following passage from Jenkins v. City of Alexandria, 324 So.2d 924 (La.App. 3rd Cir. 1975), writ refused, 328 So.2d 105, (La.1976):
"The law is settled that where a street has been properly designated as a right of way street, and appropriate signs showing it to be such have been erected, the preferred status of that street will not be *484 lost merely because a stop sign is misplaced, improperly removed, destroyed or obliterated."
Therefore, we find that Avenue H did have preferred status over Fourth Street and that drivers on H Street had the right-of-way over drivers on Fourth Street.
A motorist on a favored street has the right to assume that any driver approaching the intersection on a less favored street will yield the right-of-way. This right-of-way driver can indulge in this assumption until he sees, or should have seen, that the other car has not yielded. Clements v. Allstate Insurance Company, 383 So.2d 1375 (La.App. 4th Cir. 1980), writ denied, 385 So.2d 793 (La.1980); Willis v. Everett, supra; Dillman v. Allstate Insurance Company, 265 So.2d 322 (La.App. 4th Cir. 1972); American Road Insurance Company v. Glynn, 184 So.2d 556 (La.App. 3rd Cir. 1966); and Welch v. Welch, 169 So.2d 713 (La.App. 4th Cir. 1964). Fontenot, driving on the favored street, could not have seen Miller's car entering the intersection in time to avoid the accident since both parties contend that the bush at the intersection obscured the view of the intersecting streets.
The trial court found that Fontenot could not rely on the fact that cars on Fourth Street had previously stopped for her because there was no evidence that she had seen stop signs on Fourth Street in the past. Yet in Willis v. Everett, supra, we stated that the plaintiff in that case could presume that traffic approaching from intersecting inferior streets would yield the right-of-way to him despite the fact that, by his own admission, he was not relying on the protection of any traffic control devices facing traffic on the inferior streets. The trial court also found that Fontenot was in violation of LSA-R.S. 32:121[2] in failing to yield the right-of-way to the vehicle on her right. This statute is designed to regulate traffic flow at otherwise uncontrolled intersections, however, and does not apply to intersections regulated by stop signs. See LSA-R.S. 32:123.[3] Furthermore, as we have seen, the absence of a stop sign due to its being misplaced, improperly removed, destroyed or obliterated does not alter the preferred status of an intersecting street.
Therefore, for all the foregoing reasons, Fontenot justifiably relied on her presumed right-of-way and was not guilty of negligence in the causation of the accident.

WAS MILLER NEGLIGENT?
Plaintiffs contend that the trial court erred in its finding that the accident was not caused by Miller's fault. As pointed out by the trial court, Miller could regard the intersection between Fourth Street and Avenue H as being uncontrolled since she was unfamiliar with the intersection, there was no stop sign on her corner, and the streets appeared to be equal in stature. See Pepitone v. State Farm Mutual Automobile Insurance Company, 369 So.2d 267 (La.App. 4th Cir. 1979), writ denied, *485 371 So.2d 1343 (La.1979). However, a motorist before entering what appears to be an uncontrolled intersection must first determine that it is safe to do so. Pepitone, supra; Peterman v. City of Hammond, 378 So.2d 181 (La.App. 1st Cir. 1979); and Dillman v. Allstate Insurance Company, supra. The fact that Miller had the "directional right-of-way" under LSA-R.S. 32:121 did not relieve her of this obligation. See Pepitone, supra, footnote two; and Dillman, supra.
The trial court applied the standard set forth in the Dillman case and found that, unlike the driver found to be negligent in Dillman, Miller exercised reasonable care in entering the intersection. The court reasoned that while the driver in Dillman was negligent for failing to see a car approaching on the intersecting street even though the view was clear for one hundred feet or more, Miller was not negligent because she saw the Fontenot car approaching as soon as it entered her line of vision beyond the obstruction presented by the bush on the corner of the intersection.
We cannot agree with the trial court's finding that Miller was not negligent. Miller testified that she approached the intersection slowly and cautiously and that she applied her brakes as soon as she saw the Fontenot car. However, Miller's duty of reasonable care required that upon coming to an apparently uncontrolled intersection with a partially obstructed view between the two streets, she should have ascertained that it was safe to cross by coming to a complete stop, if necessary, before proceeding. We are of the opinion that Miller's failure to maintain a proper lookout constitutes negligence on her part which was the proximate cause of the accident. See Cry v. Travelers Insurance Company, 235 So.2d 212 (La.App. 4th Cir. 1970); and Fontenot v. Hudak, 153 So.2d 120 (La.App. 3rd Cir. 1963). Therefore, we reverse the trial court's finding that Miller was free from negligence and instead find her liable for the damages sustained by Fontenot.

DAMAGES
Having reversed the trial court's judgment, we now must ascertain from the record the amount to be awarded to Fontenot. We must also consider the Millers' alternative claim that, should she be found to be negligent in the causation of Fontenot's damages, that the amount she must pay to Fontenot should be reduced due to inability to pay.
Jeannie Fontenot sustained a moderately severe contusion of the brain stem which rendered her comatose for ten days following the accident. Since the accident she has complained of headaches, nausea, vomiting, dizziness and occasional loss of vision, although these problems had lessened in frequency and severity by the time of trial. The neurosurgeon who attended Fontenot after the accident described these symptoms as typical of the "post-concussive syndrome" which a person suffering this type of brain injury can expect to experience for eighteen months to two years following the injury. However, the neurosurgeon had difficulty relating Fontenot's complaints at the time of trial almost four years after the accident to the injuries sustained in the accident, although he did not doubt the sincerity of her complaints. In addition to the contusion and the related symptoms, Fontenot suffered a laceration of the scalp, bruises of the forehead, and superficial abrasions over the left shoulder.
Fontenot testified that she had to quit her minimum wage job earning $94.00 per week because of the severe headaches and other problems she experienced following her release from the hospital. She was unable to work more than a few days at any other job for the same reasons for a period of 2 or 3 months. Fontenot was hospitalized from May 16 to June 3, 1977, and again from August 3 to August 10, 1977, because of her injuries. Her medical damages were stipulated to be $5,931.84. (Tr. 379) It was stipulated (Tr. 378) that James Burrow's vehicle sustained damages amounting to $1,900. Mr. Burrow is entitled to recover these amounts. They are covered by his pleadings. State Farm Mutual *486 Automobile Insurance Company claimed a portion of these amounts through subrogation rights; however, State Farm has not proved its subrogation rights.
We conclude that the sum of $27,500 will adequately compensate Mrs. Fontenot for her general damages.
The Millers invoke the "inability to pay" rule and urge that, in case judgment is rendered against them, recovery against them should be confined to their ability to pay. The "inability to pay" rule in Louisiana allows consideration of evidence of the defendant's inability to pay in determining the amount of the judgment to be awarded. When ability to pay is considered, plaintiff may only be compensated to the degree that it does not impose an undue hardship on the defendant. However, application of the rule should not be carried to extremes. See Davis v. Moore, 353 So.2d 740 (La.App. 4th Cir. 1977), writs refused, 354 So.2d 1379, 354 So.2d 1384, and the cases cited therein. The applicable limits of the automobile insurance policy involved in the litigation (in this case, $10,000) should also be considered in making the award. Domingue v. Continental Insurance Company, 348 So.2d 209 (La.App. 3rd Cir. 1977).
Miller and her husband, Hershey Miller, Jr., both testified that they had sustained heavy losses of property in a flood and had fallen behind in payments on some of the debts incurred to replace that property. The couple had considered filing for re-organization under Chapter 13 of the bankruptcy laws because of their difficulty in paying these debts. However, Mr. Miller stated that he did not resort to bankruptcy because he was not very far behind in his payments to his creditors. The Miller's combined income is in excess of $30,000 per year, but both stated that they could not pay a judgment of $5,000 or $10,000.
The personal opinions of the Millers that they are unable to pay a substantial judgment are understandable but are not binding on this court. On the basis of the facts before us we hold that the inability to pay rule is not appropriate in this case. Therefore, we will not reduce the compensation to be awarded below its true value.
The award made to James Burrow and Jeannie Burrow Fontenot is not affected by their settlement with the City of Lake Charles since a claim for reduction of the award due to settlement of the claim with a joint tort-feasor was not properly made. The pleading for "contribution and indemnity" made orally in the court of the trial of this matter is not effective because it was not made in writing as required by LSA-C.C.P. art. 852.

CONCLUSION
For the reasons given above the judgment of the trial court is reversed, except as hereinafter noted.
IT IS NOW ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of James Burrow and against Hershey Miller, Jr., Elizabeth Miller and American Employers Insurance Company, in solido in the full sum of $7,831.84 together with legal interest thereon from judicial demand until paid and for all costs of these proceedings.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Jeannie Burrow Fontenot and against Hershey Miller, Jr., Elizabeth Miller and American Employers Insurance Company, in solido in the full sum of $27,500 together with legal interest thereon from judicial demand until paid and for all costs of these proceedings.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the reconventional demands of Hershey Miller, Jr., Elizabeth Miller and American Employers Insurance Company against James Burrow and Jeannie Burrow Fontenot be and they are hereby rejected, the costs of the reconventional demand to be assessed to reconvenors.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the intervention filed herein by American Employers *487 Insurance Company against James Burrow and Jeannie Burrow Fontenot be and it is hereby dismissed at the cost of the intervenor.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the liability of American Employers Insurance Company is to be limited to the limits of its policy of $10,000 to be prorated between all successful parties in this litigation, including the case consolidated herewith, all according to law.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the judgment of the trial court is affirmed insofar as it dismissed all demands against the Calcasieu Parish Police Jury and all claims by the Calcasieu Parish Police Jury and United States Fidelity and Guaranty Company.
One half of the costs of this appeal are assessed to Hershey Miller, Jr., Elizabeth Miller and their insurer, American Employers Insurance Company, and one-half of the costs are assessed to the City of Lake Charles.
AFFIRMED IN PART; REVERSED IN PART AND RENDERED.
ON APPLICATION FOR REHEARING
PER CURIAM.
Hershey Miller, Jr., Elizabeth Miller and American Employers Insurance Company filed an application for rehearing alleging that we erred in certain particulars in our original opinion and judgment.
We deny the application for rehearing.
Although we deny the application, by means of this per curiam, we correct certain errors which applicants called to our attention. The motion and order for appeal in the suit of James Burrow and Jeannie Burrow Fontenot, No. 82-89 on the docket of this court (Tr. 359) set forth the name of Jeannie Burrow Fontenot only as the party appealing. No separate appeal was made on behalf of James Burrow for the special damages asserted by him. Therefore, we delete from our original judgment on appeal and set aside as null the award to James Burrow of the sum of $7,831.84 with interests and costs. The claim of James Burrow as disposed of by the trial court judgment remains the same inasmuch as that judgment became final after the running of the delays for appeal from the judgment of the trial court.
We also will set aside the judgment rendered by us on appeal in favor of State Farm Mutual Automobile Insurance Company in its separate suit for subrogation. This suit was consolidated with the James Burrow suit. A separate appeal record for this suit was forwarded to us by the Clerk of Court for the Fourteenth Judicial District Court and was separately docketed by us and was given the docket number 82-90, 419 So.2d 488. However, State Farm Mutual Automobile Insurance Company did not appeal from the trial court's judgment rejecting its subrogation demands. Therefore, the judgment rendered by us on appeal in number 82-90 will be voided and set aside.
The applicants for rehearing complain that we erred in reversing the trial court on the merits but in the alternative urge we should have granted a reduction of the $27,500 award to Jeannie Burrow Fontenot. Applicants refer to our discussion of the ineffectiveness of the entry of an oral claim for reduction based on the settlement with the City of Lake Charles because such action would not meet the requirements of LSA-C.C.P. art. 852. Counsel for applicants has called our attention to the fact that applicants filed a written third party demand seeking "indemnity and/or contribution" against the Calcasieu Parish Police Jury and United States Fidelity and Guaranty Company and the City of Lake Charles. The third party demand was filed on June 25, 1981. A motion and order signed the same day by the trial judge allowed the filing of the third party demand. June 25, 1981, was the day the consolidated trial began.
Evidently, the discussion between the trial court and counsel recorded in the transcript (Tr. 373-375) referred, not to an attempted oral filing of the third party demand *488 for "indemnity and/or contribution," but rather to the filing of the written petition therefor and the signed order allowing it to be filed. Therefore both were apparently filed in open court. The petition and motion and order appear at pages 157 through 159 of the transcript.
As we read the record all parties agreed that the trial might proceed without formal answers being filed in response to the third party demand. All parties entered an oral denial but reserved the right to file written answers.
In other pleadings filed by applicants they have fully pleaded negligence on the part of the City of Lake Charles in failing to maintain the stop sign which was missing at the time of the accident. Inasmuch as the stop sign was missing, we deem the failure of the City to maintain it, and its consequent absence, to have been a cause in fact of the accident. Hardy v. State, Through Department of Highways, 404 So.2d 981 (La.App. 3rd Cir. 1981), writs denied, 407 So.2d 741 (La.1981), and Jones v. City of Baton Rouge, 388 So.2d 737 (La. 1980). The result of this finding is that Elizabeth Miller and the City of Lake Charles were joint tort-feasors, and they are therefore solidarity obligors.
Applicants did not pray for a reduction of any award made in favor of Jeannie Burrow Fontenot. They asked only for "indemnity and/or contribution" against the City of Lake Charles and others. Nevertheless, we think the proper relief is to reduce the award to one-half, that is, to $13,750 as required by LSA-C.C. art. 2203. Wisconsin Capital Corp. v. Trans World Land, 378 So.2d 495 (La.App. 4th Cir. 1980). See also Harvey v. Travelers Insurance Company, 163 So.2d 915 (La.App. 3rd Cir. 1964).
While we do not find the settlement in question in the record, counsel for Jeannie Burrow Fontenot announced at the beginning of the trial that "we have settled [sic] and dismiss the City of Lake Charles and its insurer reserving all rights as to all other parties." (Tr. 371) Her counsel also stated that his client agreed to protect the City's interests relative to interventions and third party claims. (Tr. 371 and 372)
For the foregoing reasons we amend our original judgment in this case to delete and set aside our judgment rendered in favor of James Burrow and against applicants in the amount of $7,831.84 with interest and costs.
The judgment in favor of Jeannie Burrow Fontenot and against Hershey Miller, Jr., Elizabeth Miller and American Employers Insurance Company is amended to reduce the award from $27,500 to the sum of $13,750 together with legal interest therein from judicial demand until paid and for all costs of these proceedings. In view of the fact that we will set aside and vacate the judgment in favor of State Farm Mutual Automobile Insurance in Number 82-90, there will be no necessity for proration of the $10,000 policy limits of American Employers Insurance Company but the liability of that insurer will be confined to its limits of liability.
With the corrections mentioned above, the application for rehearing by Hershey Miller, Jr., Elizabeth Miller and American Employers Insurance Company is denied.
APPLICATION FOR REHEARING DENIED.
NOTES
[1] This case was consolidated for trial with the case of State Farm Mutual Automobile Insurance Company v. Commercial Union Assurance Company, 419 So.2d 488 (La.App. 3rd Cir. 1982), our docket number 82-90, in which we render a separate opinion on this date.
[2] LSA-R.S. 32:121 provides:

"A. When two vehicles approach or enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left, shall yield the right of way to the vehicle on the right.
"B. The right of way rule declared in Subsection A is modified at through highways and otherwise as hereinafter stated in this part."
[3] LSA-R.S. 32:123 states in pertinent part:

"A. Preferential right of way at an intersection may be indicated by stop signs or yield signs.
"B. Except when directed to proceed by a police officer or traffic-control signal, every driver and operator of a vehicle approaching a stop intersection indicated by a stop sign shall stop before entering the cross walk on the near side at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. After having stopped, the driver shall yield the right of way to all vehicles which have entered the intersection from another highway or which are approaching so closely on said highway as to constitute an immediate hazard."
LSA-R.S. 32:123 modifies LSA-R.S. 32:121 pursuant to paragraph B of the latter statute.