556 So.2d 937 (1990)
Gary REED, Plaintiff-Appellant,
v.
Gary ARTHUR, et al., Defendants-Appellees.
No. 88-1087.
Court of Appeals of Louisiana, Third Circuit.
February 7, 1990.
*939 James L. Davis, Many, for plaintiff/appellant.
Watson, Murchison, Crews, Arthur & Corkern, Steve Crews, Natchitoches, Mayer, Smith & Roberts, Walter Hunter, Jr., Shreveport, Brittain, Williams, McGlathery *940 & Passman, Joe Passman, Natchitoches, Wm. F. Kendig, Shreveport, for defendants/appellees.
Before DOMENGEAUX, C.J., and FORET and LABORDE, JJ.
LABORDE, Judge.
Plaintiff, Gary Reed, brought this action against defendants, Gary Arthur, Richard Arthur, their automobile liability insurer, Louisiana Farm Bureau Casualty Insurance Company (Farm Bureau), the Town of Converse, Martha Sweet Loyd and Belton Loyd, for personal injuries he sustained as a consequence of a two-car intersectional collision.[1] C. William Gerhardt d/b/a William Gerhardt & Associates intervened in the lawsuit to recover attorney's fees and expenses allegedly due the law firm as a result of its representation of the plaintiff. After a trial on the merits, the trial judge found in favor of the defendants and against the plaintiff. The plaintiff appeals the judgment rendered against him. We affirm in part, reverse in part and remand to the trial court for a trial on the intervention.

FACTS
On December 6, 1985, at approximately 6:30 a.m., Gary Reed and Richard Arthur left their homes in Negreet, Louisiana in a 1979 Ford Courier pickup truck driven by Richard Arthur and owned by his brother Gary Arthur. Both men were traveling to Converse, Louisiana on their first day of a new roofing job which their employer, Gary Arthur, had contracted to perform. The two proceeded north on U.S. Highway 171, until they reached Converse, where they turned west on Caddo Street. They traveled in a westerly direction on Caddo Street, eventually reaching its intersection with Slayton Street. As Richard Arthur entered the intersection, he collided with a school bus being driven by Martha Sweet Loyd. Martha Sweet Loyd was driving her school bus in a northerly direction on Slayton Street, proceeding towards the intersection with Caddo Street. She had entered the intersection and cleared one lane of Caddo Street, before she was broadsided by the vehicle driven by Richard Arthur.
At their intersection, Slayton is the superior street and Caddo (i.e. the street Richard Arthur and Gary Reed were traveling on) is the inferior. Slayton Street is the wider of the two streets, and it is the only one of the two which is centerlined. Traffic on Caddo Street was normally governed by a stop sign at the intersection; however, on the day of the accident, the stop sign had been turned 90 degrees, so that it was facing northbound traffic on Slayton Street. Neither Gary Reed nor Richard Arthur had traveled on Caddo Street prior to this accident and it is apparent that neither one of them observed the turned stop sign. The stop sign was under the exclusive jurisdiction, regulation and control of the Town of Converse.
Trial on this matter was held on March 14, 1988. In his written reasons for judgment, the trial judge found that there was no negligence on the part of Martha Sweet Loyd or the City of Converse and that the sole cause of the accident was the negligent conduct of Richard Arthur. Additionally, the trial judge, on his own motion, granted an exception of no right of action in favor of Gary Arthur and his automobile liability insurer Farm Bureau. This exception was based on the trial judge's finding that the plaintiff was in the course and scope of his employment at the time of the accident and was therefore barred from bringing a tort action against his employer, Gary Arthur. The plaintiff asks this court to review these decisions.

LIABILITY OF MARTHA SWEET LOYD
The plaintiff contends that the trial court erred in finding the driver of the school bus, Martha Sweet Loyd, free from fault. He argues that if Ms. Loyd had been maintaining a proper lookout, she would have *941 seen that the truck driven by Richard Arthur was not going to stop at the intersection and could have taken evasive action to avoid the collision. We disagree.
As a motorist on a favored street, Ms. Loyd had the right to assume that a driver approaching the intersection on a less favored street would yield the right-of-way. A motorist on a favored street has the right to indulge in this assumption until he sees, or should have seen, that the other car has not yielded. Burrow v. Commercial Union Assurance Co., 419 So.2d 479 (La.App. 3d Cir.), writ denied, 423 So.2d 1162 (1982); Willis v. Everett, 359 So.2d 1080 (La.App. 3d Cir.1978), writ denied, 362 So.2d 800 (La.1978). Furthermore, it is well established that where a street has been properly designated as a right-of-way street, and appropriate signs showing it to be such have been erected, the preferred status of that street will not be lost because a stop sign has been improperly removed or obliterated. Burrow, supra; Jenkins v. City of Alexandria, 324 So.2d 924 (La.App. 3d Cir.1975), writ denied, 328 So.2d 105 (La.1976).
Ms. Loyd testified at trial that she saw the truck approaching the intersection, but that it was her impression that it would yield the right-of-way. She further testified that she did not realize that the truck was not going to stop until the two vehicles collided. We also note that Ms. Loyd stated that she was driving under the speed limit and that she had no knowledge that the stop sign had been tampered with. Accordingly, we find that Ms. Loyd was justified in relying on her presumed right-of-way and was not negligent in the occurrence of the accident.

LIABILITY OF THE TOWN OF CONVERSE
The plaintiff also argues that the trial judge was clearly wrong in not attributing any degree of fault to the Town of Converse. He claims that the Town of Converse's failure to maintain the stop sign in proper order was negligence which was a cause of the accident.
At the outset, we find it important to point out that the plaintiff's theory of recovery against the Town of Converse is based on negligence under LSA-C.C. art. 2315 and not strict liability under LSA-C.C. art. 2317. Under a negligence theory, in order to hold a public body liable for an unsafe or hazardous condition, it must be shown that the public body had prior notice, either actual or constructive, of the dangerous condition and that it failed to take corrective action within a reasonable time. Briggs v. Hartford Insurance Co., 532 So.2d 1154 (La.1988); Garrett v. City of Baton Rouge, 521 So.2d 638 (La.App. 1st Cir.), writ denied, 523 So.2d 235 (La.1988). In the instant case, the plaintiff alleges that the Town of Converse had actual knowledge that the stop sign in question was defective because it had been tampered with on a prior occasion. He also notes that police records indicate that another sign located across the street had also been turned on a previous occasion. We find the fact that these signs were altered on two previous occasions not to be sufficient to constitute actual knowledge on the part of the town that the stop sign in question was in someway defective. We also find constructive knowledge to be lacking in this case. The Chief of Police, John Brock, testified that he passed the stop sign at 9:30 p.m., the night before the accident. The accident occurred at approximately 7:45 a.m., roughly ten hours later. We are convinced that ten nighttime hours is not a sufficient period as to constitute constructive knowledge. Therefore, we find no error in the trial judge's determination that the Town of Converse was not negligent.

LIABILITY OF GARY ARTHUR AND FARM BUREAU
In his final assertion of error, the plaintiff argues that the trial judge committed manifest error in granting the exception of no right of action in favor of Gary Arthur and Farm Bureau. The trial judge found that both Richard Arthur and the plaintiff were employees of Gary Arthur and were in the course and scope of their employment at the time of the accident. Accordingly, *942 the trial judge held that the plaintiff had no right to proceed in tort against the owner of the vehicle, Gary Arthur, or his automobile liability insurer, Farm Bureau; the plaintiff's sole remedy being under the worker's compensation law. We disagree with the trial judge's finding that Gary Arthur was in the course and scope of his employment at the time of the accident, as we determine that this finding is clearly contrary to the law and evidence in this case.
As a general rule, an accident which befalls an employee while he is traveling to and from work is not in the course of his employment. Boutte v. Mudd Separators, Inc., 236 So.2d 906 (La.App. 3d Cir.), writ denied, 240 So.2d 231 (La.1970). A well-recognized exception to this general rule occurs when the employer has interested himself in the transportation to and from work as an incident to the employment agreement. If an employee can establish this, then an accident occurring on the way to or from work is compensable under the worker's compensation law. Fox v. Commercial Union Insurance Co., 396 So.2d 543 (La.App. 3d Cir.1981); Belvin v. Cali, 325 So.2d 897 (La.App. 4th Cir.1976). In Washington v. Southern Farm Bureau Casualty Insurance Co., 499 So.2d 1125 (La.App. 3d Cir.1986), this court recognized the following regarding the application of this exception to the general rule:
"`The issue becomes a factual one. The inquiry to be made is, do the facts show that transportation was an incident to the employment agreement?'
One criterion in making this factual determination is provided in [the Belvin] case:
`In distinguishing between transportation furnished as an incident to employment as opposed to a gratuitous or voluntary giving of a ride home, we consider it pertinent to inquire whether the activity undertaken was in furtherance of the employer's business when the injury occurred.'
Belvin, 325 So.2d at 900.
In addition, the following considerations are raised in Malone & Johnson, Louisiana Civil Law Treatise, Worker's Compensation Sec. 170:
`The fact that the employer occasionally provides transportation to accommodate an employee is not enough to bring the situation within the exception to the general rule that trips to and from the place of work are outside the course of employment. * * * In view of the informal character of hiring agreements, the undertaking to provide transportation must usually be implied from the circumstances.'"
Id. at 1127.
After a careful examination of the record, we do not find the exception to the general rule to be applicable in this case. The plaintiff testified that he had been employed by Gary Arthur for one and one-half to two years and that he had never been reimbursed for travel expenses during that time. The plaintiff also testified that he had provided his own transportation to work in the past. Additionally, there is no evidence of an employment agreement between the plaintiff and Gary Arthur concerning transportation.
We find that Richard Arthur's offer to drive the plaintiff to the job site in their employer's truck was a ride offered out of courtesy and not out of an obligation from an employment agreement. Richard Arthur confirmed this fact in his deposition testimony:
"Q. And you were just giving him a ride out of friendship, or convenience?
A. Yes, sir.
Q. So Mr. Reed didn't pay you for taking him to and from work, is that correct?
A. That's right."
From these facts we cannot say Gary Arthur furnished transportation to the plaintiff as an incident to the employment agreement; nor, can we say that Richard Arthur's offer to give the plaintiff a ride to the job site in Gary Arthur's truck was, in any significant way, in furtherance of Gary Arthur's business.
*943 In coming to his conclusion that the plaintiff was in the course and scope of his employment at the time of the accident, the trial judge relied heavily on this court's decision in Washington v. Southern Farm Bureau Casualty Insurance Co., 499 So.2d 1125 (La.App. 3d Cir.1986). In Washington, an employee injured on his way to work in a vehicle owned and driven by his employer was held to be within the course of his employment at the time of the accident. There was an agreement between the employee and the employer that the employee would provide his own transportation; however, as it turned out, the employer provided daily transportation to the employee over a twelve week period. On those facts, this court determined that the employer provided transportation on more than an occasional basis and that the transportation was in furtherance of the employer's business. We find the Washington case to be factually distinguishable from the case at bar. As was previously mentioned, the plaintiff in the instant case, provided his own transportation to work and the ride provided by Richard Arthur was merely offered out of courtesy. There is no evidence whatsoever to indicate that the plaintiff was provided transportation by his employer on a regular basis.
For the foregoing reasons, we hold that the trial judge erred in finding the plaintiff to be in the course of his employment at the time of the accident and in dismissing his tort claim against Gary Arthur and Farm Bureau. Consequently, we reverse the trial judge's grant of an exception of no right of action in favor of those two parties.
We agree with the trial court that the negligence of Richard Arthur was the sole proximate cause of the accident. Richard Arthur was driving a vehicle owned by his brother, Gary Arthur, and insured by Farm Bureau. The law is well settled that the owner of an automobile is not liable for damages caused while his automobile is being operated by a third person with his consent unless the owner was present or the third party was his agent, servant or employee and was acting within the course of his agency or employment. Martin v. Brown, 240 La. 674, 124 So.2d 904 (1960); Hughes v. Flynn, 489 So.2d 1044 (La.App. 1st Cir.1986). Richard Arthur was an employee of Gary Arthur, but was not in the course of his employment when the accident occurred. Therefore, Gary Arthur can not be held liable for the negligence of Richard Arthur.
As for the liability of Farm Bureau, it is undisputed that there was a policy of insurance in effect at the time of the accident, insuring the truck which Richard Arthur was driving, issued by Farm Bureau to Gary Arthur. The insurance policy provides that Farm Bureau will pay on behalf of the insured all sums which the insured will become legally obligated to pay as damages because of bodily injury sustained by any person. The word insured is defined as follows:
"... the unqualified word `insured' means the named insured and any resident of the same household. Also any person while using the automobile and any person or organization legally responsible for its use, provided the actual use of the automobile is by the named insured or spouse or with permission of either."
The policy also excludes certain persons from insured status:
"The insurance with respect to any person or organization other than the named insured or spouse does not apply:
* * * * * *
(2) To any employee with respect to bodily injury to another employee of the same employer injured in the course of such employment out of the maintenance or use of the automobile in the business, including farming, of such employer

..." (Emphasis added)
Employee is defined by the policy as, "all persons while engaged in the employment of the insured, including being transported to and from work, except domestic servants." As there are no allegations to the effect that Richard Arthur did not have permission from the named insured, Gary *944 Arthur, to drive the truck on the day of the accident, it is clear that, under the terms of the policy, he was insured by Farm Bureau. We also determine that since the employee, Gary Reed, was not injured in the course of his employment in an accident arising out of the use of the truck in his employer's business, the exclusion does not apply. Accordingly, we find Farm Bureau to be liable to the plaintiff for any damages he sustained.

DAMAGES
The record on appeal is sufficient for this court to adequately assess the damages incurred by the plaintiff. The evidence establishes that as a result of the collision, the plaintiff suffered the following injuries: 1) a large laceration over the left eye (which will leave some permanent scarring), 2) several small abrasions and contusions over the face, 3) pain in his left shoulder and 4) headaches. The plaintiff also asserts that he suffered a deviated septum as a consequence of the accident. The plaintiff bases this assertion on the deposition testimony of Dr. Simeon Wall. Dr. Wall examined the plaintiff after the accident and was of the opinion that his septum was deviated and was causing him some minor airway obstruction on the right side of his nose. Dr. Gregory Founds, the physician who initially treated the plaintiff, testified at his deposition that he found no evidence of a deviated septum and that the plaintiff had never mentioned any difficulty in breathing to him. When asked to review the plaintiff's head x-rays at his deposition, Dr. Founds testified that there was no indication of a deviated septum. We note that as a general rule, the treating physician's testimony should be given more weight than that of the doctor who examines the plaintiff for diagnosis purposes only. Ellis v. Rapides Parish School Board, 419 So.2d 990 (La.App. 3d Cir.1982). The plaintiff also testified that his nose had become crooked because of the accident, but this testimony was contradicted by several witnesses who testified that the appearance of his nose had not changed.
After reviewing all the testimony pertaining to the plaintiff's nose, we do not think he has carried his burden of proving that he incurred a deviated septum as a result of the collision. We do find, however, that the plaintiff has sufficiently proved the other injuries and that he suffered a moderate degree of pain because of them. We believe that a general damage award of $4,000.00 should adequately compensate the plaintiff for these injuries.
As for the special damages, we agree with the plaintiff that he is entitled to recover $314.00 for the treatment by Dr. Founds, $75.00 for the examination by Dr. Wall and $40.74 for the medication from Medical Center Pharmacy; however, we are not in agreement with the amount the plaintiff claims in lost wages. The plaintiff testified at his deposition that he had stayed off work for two weeks following the accident. At trial, the plaintiff stated that he had been off work for three weeks, an increase of one week from his deposition testimony. Upon a review of the evidence, we are convinced that the plaintiff was actually off work for a shorter time than either his deposition testimony or his trial testimony would indicate. The plaintiff's employer's wife, Debbie Arthur, testified at trial that she often helped her husband with the payroll and that from their payroll records, the plaintiff missed approximately four days of work. She stated that the plaintiff's first check after he returned to work was dated December 21, 1985, and was for eight days of work. A copy of this check was accepted into evidence. Additionally, Richard Arthur, the plaintiff's co-employee, stated in his deposition that it was his recollection that the plaintiff returned to work after four days.
In light of the abovementioned testimony, we determine that the plaintiff is entitled to lost wages for four days. The plaintiff testified at trial that he worked ten hours a day for $6.00 an hour. Using these figures, the plaintiff's lost wage award amounts to $240.00. The plaintiff's total special damage award is $669.74.

INTERVENTION
C. William Gerhardt d/b/a C. William Gerhardt & Associates intervened *945 in the lawsuit filed by the plaintiff, seeking to recover attorney's fees and expenses allegedly due the law firm for its representation of the plaintiff. The petition of intervention alleges that the plaintiff had discharged the firm as his attorney, without cause. The petition of intervention further alleges that the plaintiff was under contract to the firm to pay it attorney's fees in the amount of 40% of all amounts received, and 45% in the event any judgment is appealed from, in addition to all expenses. The expenses are alleged to be $509.70. Finally, the petition of intervention states that a copy of the contract and a statement of costs are attached as exhibits. The record on appeal does not contain a copy of either the contract or the statement of costs.
The plaintiff answered the petition of intervention with a general denial of its allegations. The plaintiff further answers the petition by alleging that:
"... when he discharged the C. William Gerhardt law firm it failed and refused to release his file, would not voluntarily withdraw from the case requiring the filing of a rule and the attendant legal expenses involved in said rule which he alleges should be not less than the sum of $750.00 and hence, should the mover in intervention prevail herein he should have judgment against the law firm for that sum of money. The said Gary Reed further shows that reason for the discharge was the lack of communication between the two (2) parties, and the failure on the part of the law firm to aggressively bring to a close his legitimate claim hence, no fees are due as alleged in the petition in intervention."
The record on appeal is completely devoid of any evidence pertaining to the allegations raised in either the petition of intervention or the plaintiff's answer thereto. It is well-established in Louisiana jurisprudence that an appellate court can remand an action for proper consideration when the record is so incomplete that the court is unable to pronounce definitively on presented issues or where the parties have failed, for whatever reasons, to produce available evidence material to a proper decision. Dangerfield v. Harris, 484 So.2d 838 (La.App. 1st Cir.1986); Cheramie v. Bone, 444 So.2d 200 (La.App. 1st Cir.1983); Bodin v. Bodin, 392 So.2d 759 (La.App. 3d Cir.1980). We determine that in the interest of justice, this intervention should be remanded to the trial court for trial on the merits. See Robichaux v. Cade, 357 So.2d 849 (La.App. 4th Cir.1978). As in the Robichaux case, the intervenor's privilege on plaintiff's judgment is recognized and maintained pending the establishment of its claim for attorney's fees against the plaintiff at trial on the intervention.
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of the plaintiff, Gary Reed, and against defendant, Farm Bureau Casualty Insurance Company for $4,669.74, together with legal interest from the date of judicial demand until paid. The plaintiff's claims against all other defendants in this lawsuit are dismissed. The intervention in this matter is remanded to the trial court for trial on the merits. Farm Bureau Casualty Insurance Company is cast for all costs.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
REMANDED FOR TRIAL OF INTERVENTION.
NOTES
[1] Richard Arthur and Belton Loyd were dismissed from this lawsuit pursuant to a motion to dismiss signed on November 10, 1987.